**NO. 23-4330**

In The

# United States Court Of Appeals
## For The Fourth Circuit

### In re: SEARCH WARRANTS ISSUED FEBRUARY 18, 2022

———————————————————

**UNITED STATES OF AMERICA,**

*Plaintiff – Appellee,*

**v.**

**JOHN DOE,**

*Movant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE**

———————

**BRIEF OF APPELLANT**

———————

**Elliot S. Abrams**
**Erin L. Wilson**
**CHESHIRE PARKER**
  **SCHNEIDER, PLLC**
**133 Fayetteville Street**
**Suite 400**
**Raleigh, NC  27601**
**(919) 833-3114**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street  ♦  P.O. Box 1460 (23218)  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

## TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF JURISDICTION ................................................... 1

ISSUE PRESENTED ...................................................................... 2

STATEMENT OF THE CASE .......................................................... 2

SUMMARY OF THE ARGUMENT .................................................. 8

STANDARD OF REVIEW ............................................................... 11

ARGUMENT .................................................................................. 12

    I.    The District Court Erred in Finding John Doe Had Not Demonstrated a Likelihood of Success on the Merits .......... 13

    II.    The District Court Erred in Finding Lack of Irreparable Harm ................................................................................ 27

    III.    The District Court Erred in Finding the Balance of Equities Weighed Against Enjoining the Filter Review Protocol ............................................................................ 33

    IV.    The District Court Erred in Finding the Public Interest Would Not Be Served by Enjoining the Filter Review Protocol ............................................................................ 37

CONCLUSION ............................................................................... 40

STATEMENT REGARDING ORAL ARGUMENT ............................. 40

CERTIFICATE OF COMPLIANCE .................................................. 42

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

*Amoco Prod. Co. v. Gambell,*
    480 U.S. 531 (1987) ................................................................ 33, 34

*Doe v. United States,*
    487 U.S. 201 (1988) ........................................................................ 31

*Elrod v. Burns,*
    427 U.S. 347 (1976) ........................................................................ 27

*Fleet Feet, Inc. v. NIKE, Inc.,*
    986 F.3d 458 (4th Cir. 2021) .......................................................... 13

*Hoffman v. United States,*
    341 U.S. 479 (1951) ............................................................. 9, 31, 32

*In re Grand Jury Subpoenas,*
    454 F.3d 511 (6th Cir. 2006) ................................................ 9, 21, 38

*In re Search Warrant Issued June 13, 2019,*
    942 F.3d 159 (4th Cir. 2019) .................................................. *passim*

*In re Search Warrants Executed on April 28, 2021,*
    2021 WL 2188150 ...................................................................... 16, 18

*In re Search Warrants,*
    1:21-cv-04968-SDG, 1:21-cv-04969-SDG,
    2021 WL 5917983 (N.D. Ga. Dec. 15, 2021) ............................. 16, 29

*Leaders of a Beautiful Struggle v. Balt. Police Dep't,*
    2 F.4th 330 (4th Cir. 2021).............................................................. 11

*Maryland v. Garrison,*
    480 U.S. 79 (1987) .......................................................................... 24

ii

*Matter of O'Donovan,*
  No. 22-mj-1000-DLC,
  2022 WL 10483922 (D. Mass. Oct. 17, 2022) ........................... 16, 17

*Matter of Search of Information Associated with*
*Two Accounts Stored at Premises Controlled by Google LLC,*
  Case No. 22-GJ-28, 2022 WL 18673694 (D.D.C. June 27, 2022) ...... 16

*Pashby v. Delia,*
  709 F.3d 307 (4th Cir. 2013) .......................................................... 13

*United States v. Avenatti,*
  559 F. Supp. 3d 274 (S.D.N.Y. 2021) ........................................ 16, 17

*United States v. Blasco,*
  702 F.2d 1315 (11th Cir. 1983) ..................................................... 28

*United States v. Brugman,*
  655 F.2d 540 (4th Cir. 1981) ..................................................... 27-28

*United States v. Hastings,*
  461 U.S. 499 (1983) ........................................................................ 38

*United States v. Hubbell,*
  530 U.S. 27 (2000) ..................................................................... 9, 31

*United States v. Indivior Inc.,*
  448 F. Supp. 3d 587 (W.D. Va. 2020) ....................................... 25, 26

*United States v. Korf,*
  11 F.4th 1235 (11th Cir. 2021), *cert. denied sub nom.,*
  No. 21-1364, 2022 WL 4651429 (U.S. Oct. 3, 2022) ....... 4, 16, 17, 20

*United States v. Nobles,*
  442 U.S. 225 (1975) ........................................................................ 28

*United States v. Ritchey,*
  605 F. Supp. 3d 891 (S.D. Miss. 2022) .................................... *passim*

*United States v. Taylor,*
    Crim. No. 6:21-cr-00013-GFVT-HAI,
    2022 WL 9408779 (E.D. Ky. Oct. 14, 2022) ................................. 16, 18

*United States v. Vepuri,*
    585 F. Supp. 3d 760 (E.D. Pa. 2021) ...................................... *passim*

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) ......................................................... 28, 38

*Winter v. Nat'l Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ........................................................... 13, 33

**Statues:**

18 U.S.C. § 3006A ................................................................. 3

28 U.S.C. § 1331 ................................................................. 1

28 U.S.C. § 1292(a)(1) ........................................................... 2

**Constitutional Provisions:**

U.S. Const. amend. IV ........................................................ 18, 24

U.S. Const. amend. V ...................................................... *passim*

U.S. Const. amend. VI ..................................................... *passim*

**Rules:**

Fed. R. Civ. P. 65 ............................................................... 1

Fed. R. Crim. P. 16(d) ........................................................... 1

Fed. R. Crim. P. 41(g) ........................................................... 1

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of the United States District Court for the Western District of North Carolina, Charlotte Division, denying John Doe's motion for injunctive relief to prohibit federal prosecutors and staff from unilaterally determining that materials seized from John Doe pursuant to search warrants are not attorney-client privileged.

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Appellant John Doe brought claims under the Constitution, as well as under Federal Rule of Civil Procedure 65 and Federal Rules of Criminal Procedure 16(d) and 41(g).

On February 3, 2023, the magistrate judge entered an order denying in part John Doe's motion for a preliminary injunction. JA75-84. John Doe appealed to the district court, and, on May 1, 2023, the district court entered a memorandum opinion and order affirming the order of the magistrate judge. JA127-138. On May 4, 2023, John Doe filed a Notice of Appeal. JA139.

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review the district court's memorandum opinion and order because it is an interlocutory order refusing an injunction.

## ISSUE PRESENTED

Determining whether a document is privileged is a judicial function that cannot be delegated to the executive branch. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 176 (4th Cir. 2019). The issue presented is whether an executive branch filter team makes a privilege determination when it unilaterally designates a document as not potentially privileged and turns that document over to the prosecution team without affording the privilege holder an opportunity to object.

## STATEMENT OF THE CASE

In late February 2022, the government seized 23 items of electronic storage (computers, hard drives, and/or other media) belonging to John Doe and his companies. JA23.

Prior to conducting the seizure, the government recognized that its seizure would likely result in the seizure of attorney-client privileged

material, and, accordingly, obtained, *ex parte*, authorization to utilize a filter team to review the seized material for potential privilege.   JA2-16.

On June 29, 2022, undersigned counsel was appointed by the court pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, to represent John Doe after prior retained counsel withdrew.

On October 13, 2022, a member of the Prosecution Team contacted undersigned counsel requesting search terms to guide the government in conducting a privilege review of the seized electronic material, which had not yet been reviewed.  JA23.  The next day, undersigned counsel sent a letter to counsel for the government specifically invoking John Doe's attorney-client privilege and requesting an opportunity to confer with the government about crafting a mutually agreeable filter review protocol. JA23-24.  The parties were ultimately unable to come to an agreement on an appropriate protocol.   The primary dispute was John Doe's contention that the Filter Team could not unilaterally designate documents as non-privileged and turn those documents over to the Prosecution Team without affording John Doe an opportunity to lodge privilege objections and obtain, as necessary, a judicial privilege determination.  *Compare* JA60-61, *with* JA25.

Specifically, the government's proposed protocol ("Government's Proposed Filter Review Protocol") provided:

  a. that an executive branch Filter Team would conduct the initial privilege review;

  b. that the Filter Team would be comprised of "attorneys, law clerks, investigators, agents, and staff" within the same prosecuting office and agencies responsible for the investigation and potential prosecution of John Doe; and

  c. that any materials not flagged by certain keyword searches would be provided to the Prosecution Team without any judicial determination of non-privilege or opportunity for John Doe to object to their designation as non-privileged.

JA60-61.

John Doe's proposed protocol ("John Doe's Proposed Filter Review Protocol") was a verbatim replication of the protocol affirmed by the Eleventh Circuit in *United States v. Korf*, 11 F.4th 1235, 1243 (11th Cir. 2021), *cert. denied sub nom.*, No. 21-1364, 2022 WL 4651429 (U.S. Oct. 3, 2022), which relied on this Court's opinion *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019). John Doe's Proposed Filter Review Protocol provided:

  a. The government shall process the items and provide them to the movants, on a rolling basis, so that the movants may perform the initial privilege review. Within forty-five (45) days of receipt of these items, the movants shall release all non-privileged items to the government's investigative/prosecution team and provide a

privilege log to the government's filter team for all items for which they assert a privilege.

b. The government's filter team shall be comprised of attorneys and staff from outside the [prosecuting] office. The filter team shall not share a first level supervisor with anyone on the investigative/prosecution team. Any supervisor involved in the filter team review shall be walled off from the underlying investigation.

c. The government's filter team is permitted to review any items listed on the movants' privilege log and may challenge any of the movants' privilege designations.

d. The government's filter team and the movants' counsel shall confer and attempt to reach a resolution as to those items challenged by the government's filter team.

e. If the parties are unable to reach a resolution, the parties shall file a joint notice with the Court. Either the Court or a special master shall rule on the parties' privilege disputes.

f. The filter team will provide to the investigative team only those items for which the parties agree or for which the privilege has been overruled.

JA25.

On December 2, 2022, John Doe filed a motion for an injunction to establish a filter review protocol in accordance with the protocol John Doe proposed to the government. JA21-38. In response to the government's argument that John Doe had failed to show how he would be harmed by the Government's Proposed Filter Review Protocol, John Doe attached a

5

declaration noting that outside counsel had been involved in advising him and his companies on various legal issues and attesting to his belief that a vast amount of privileged documents and communications were seized, much of which relate to the same or similar subject matter that he understood to be the subject of the government's investigation. JA73-74.

On February 3, 2023, without a hearing, the magistrate judge entered an order adopting the Government's Proposed Filter Review Protocol with the sole modification that John Doe could provide search terms to the government to assist the government's filter review, if John Doe so desired. JA75-84. Under this Modified Filter Review Protocol, any documents that the government Filter Team unilaterally deems non-protected are turned over to the Prosecution Team without any opportunity for John Doe to lodge an objection.[1]

---

[1] Specifically, the Modified Filter Review Protocol provided:

1.  The Filter Team will sequester from the warrant-obtained electronic devices **potentially protected materials** by running a comprehensive list of privilege-related search terms over the entire population of records. If a privilege-related term hits on one of the records, that record, as well as any attachment(s), will be sequestered and designated as **potentially**

6

John Doe appealed to the district court on the ground that the Modified Filter Review Protocol erroneously delegates privilege determinations to the government's Filter Team by allowing the Filter Team to unilaterally designate documents as "non-protected" and turn those documents over to the Prosecution Team without affording John Doe an opportunity to object. JA87-104. John Doe also noted that, in order to avail himself of the only protective procedure established by the magistrate judge in the Modified Filter Review Protocol, John Doe would have to waive his Fifth Amendment right to silence, because John Doe's only remedy under the Modified Filter Review Protocol is providing the government search terms that could identify witnesses that might lead to inculpatory evidence against John Doe. JA97-98. On May 1, 2023, without holding a hearing, the district court affirmed by way of a memorandum opinion and order. JA127-138.

On May 4, 2023, John Doe timely appealed to this Court. JA139.

---

**protected materials**. The remaining records will be designated as **non-protected materials**.

2. **Non-protected materials** will be made available to the Prosecution Team.

JA60.

## SUMMARY OF THE ARGUMENT

In *In re Search Warrant Issued June 13, 2019*, this Court held that determining whether material is covered by the attorney-client privilege "is a judicial function," and that the filter review protocol approved by the district court in that case "improperly delegated judicial functions to the Filter Team" by authorizing the filter team to unilaterally designate a document as non-privileged and turn that document over to the prosecution team without the consent of the privilege holder or a court order. 942 F.3d at 176-77.

Here, the district court approved a filter review protocol that has the same defect. It authorized the government's Filter Team to unilaterally designate documents as "non-protected" and turn those documents over to the Prosecution Team without obtaining a court order or John Doe's consent. Thus, the district court reversibly erred in finding that John Doe was unlikely to succeed on the merits and that the other injunction factors were not met.

Regarding the irreparable harm to John Doe, the attorney-client and work-product privileges are vital components of our adversarial system of justice and the Sixth Amendment right to counsel that they

protect. The Modified Filter Review Protocol creates a substantial risk of irreparable harm to John Doe's privileges in at least two ways. First, because "the government's fox is left in charge of the appellant['s] henhouse," *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006); *see also In re Search Warrant Issued June 13, 2019*, 942 F.3d at 178, by allowing a team of prosecutors and staff (from the same prosecutorial office as the Prosecution Team) to determine whether documents are privileged, there is a significant risk that the Modified Filter Review Protocol will result in the Prosecution Team obtaining privileged materials. Second, because the Modified Filter Review Protocol requires John Doe to provide information (*i.e.*, search terms identifying his legal counsel) to the government in order to attempt to protect his privileges, the Modified Filter Review Protocol requires John Doe to waive the Fifth Amendment privilege in order to protect his attorney-client privilege—particularly because this information could "furnish a link in the chain" to identifying potential witnesses that may assist the prosecution's case. *See United States v. Hubbell*, 530 U.S. 27, 28 (2000) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

The district court further erred in determining that the equities do not favor affording John Doe a brief opportunity to lodge privilege objections before the Prosecution Team reviews material provided by the Filter Team. The government itself waited approximately eight months to attempt to begin its review, and, by forcing John Doe to litigate this issue rather than afford him the requested brief (45-day) opportunity to object, *see* JA25, the government has already itself delayed its review of the material by over a year, *see* JA106-107 (discussing historical timeline of government's investigation). Thus, the brief delay in the government's ability to review materials that would be occasioned by allowing John Doe the opportunity to lodge privilege objections does not favor denial of this request. And the government does not contend that interposing a neutral judicial officer or allowing John Doe an opportunity to object would undermine the quality of the filter review process. Thus, any minimal delay in the investigation does not outweigh the harm caused by improperly delegating the authority to make privilege determinations to the government's Filter Team.

Lastly, issuance of a preliminary injunction preventing unilateral privilege determinations would serve the public interest. The public has

10

a substantial interest in protecting the attorney-client privilege, which is a bedrock protection of our adversarial justice system. The public also has an interest in maintaining actual fairness, and the appearance of fairness, both of which would be undermined by allowing the government to make unilateral privilege determinations.

In short, because the district court approved a filter review protocol that allows the government Filter Team to make unilateral privilege determinations, the district court abused its discretion in denying John Doe's motion requesting a brief opportunity to lodge privilege objections before the Prosecution Team reviewed material provided by the Filter Team. This Court should reverse the district court's order denying John Doe's motion and remand with instructions that the district court impose a filter review protocol that affords John Doe an objections period before documents pass from the Filter Team to the Prosecution Team.

## STANDARD OF REVIEW

This Court "review[s] a district court's denial of a preliminary injunction for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc). "A court

abuses its discretion in denying preliminary injunctive relief when it rests its decision on a clearly erroneous finding of a material fact, or misapprehends the law with respect to underlying issues in litigation." *Id.* (cleaned up) (quoting *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 171).

## ARGUMENT

The district court reversibly erred in approving, over John Doe's objection, an attorney-client privilege review protocol that allowed a government filter team to unilaterally designate documents as non-privileged and turn those documents over to the prosecution team without affording the privilege holder (John Doe) an opportunity to object. The district court erroneously held that the Filter Team's designation of documents as non-privileged or "non-protected" was not a privilege determination but was, instead, "merely a process to identify attorney-client material among the seized records." JA133. Because the district court's denial of the injunction relied on this erroneous legal premise, and because this Court's precedent prohibits government filter teams from making unilateral privilege determinations, the Court should reverse the district court's denial of John Doe's motion.

"To obtain a preliminary injunction, a movant must show that (i) it is likely to succeed on the merits, (ii) it is likely to suffer irreparable harm without preliminary injunctive relief, (iii) the balance of the equities tips in its favor, and (iv) injunctive relief is in the public interest." *Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 462 (4th Cir. 2021) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Application of these factors establishes that the district court reversibly erred in denying John Doe's motion.

## I.    The District Court Erred in Finding John Doe Had Not Demonstrated a Likelihood of Success on the Merits.

"To prevail on the [likelihood of success] factor, [John Doe] must make a 'clear showing' that the [filter protocol is] legally flawed." *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 175 (citing *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013)).

Under *In re Search Warrant Issued June 13, 2019*, a filter protocol that authorizes a government filter team to unilaterally designate documents as non-privileged and turn those documents over to the prosecution team violates separation of powers because doing so constitutes the executive branch making a final privilege determination,

which is a function reserved for the judicial branch. *See* 942 F.3d at 176. Specifically, the Court explained that

> when a dispute arises as to whether a lawyer's communications or a lawyer's documents are protected by the attorney-client privilege or work-product doctrine, the resolution is a judicial function. Put simply, a court is not entitled to delegate its judicial power and related functions to the executive branch, especially when the executive branch is an interested party in the pending dispute.

*Id.* at 176 (citations omitted).

Of course, *In re Search Warrant Issued June 13, 2019* does not preclude the use of any government filter team; it merely requires that contested privilege determinations be made by a judicial officer, as opposed to an executive branch official. *See* 942 F.3d at 176-77, 181. For, as Judge Rushing noted, a protocol under which "no documents— including those the Filter Team considers non-privileged—can be sent to the Prosecution Team without either the consent of the [privilege holder] or a court order" would be permissible. *Id.* at 184 (Rushing, J., concurring). Such a protocol is what John Doe sought—that is, one where the government Filter Team first reviews the documents and makes its *preliminary* privilege determination, and where John Doe is then afforded a brief opportunity to review those documents preliminarily

designated by the Filter Team as non-privileged and either consent or object to the Filter Team's preliminary privilege determination before documents are provided to the Prosecution Team.

Following *In re Search Warrant Issued June 13, 2019*, the district court in *United States v. Ritchey* addressed a nearly identical situation. It explained:

> [T]he parties hotly contest whether the Government must provide an objections period to potential privilege holders before production of non-["Potentially Privileged Materials" (PPM)] to the prosecution team. As a general matter, if a filter team determines that a seized document is non-PPM, this is a preliminary privilege finding. However, the filter team's act of producing documents to the prosecution team carries legal significance. Namely, in the eyes of the Court, once materials are produced to the prosecution team, a final privilege determination has been made.
>
> In this case, the Government's filter team protocol plainly does not provide Ritchey with an objections period. Likewise, there is no indication that the parties informally agreed to the present protocol. In turn, the current protocol vested the final privilege determination in the filter team. This undermines the adequacy of the current filter team protocol.

605 F. Supp. 3d 891, 902 (S.D. Miss. 2022) (citing cases, including *In Re Search Warrant Issued June 13, 2019*, 942 F.3d at 176-77).

The court's reasoning and conclusion in *Ritchey* is consistent with all of the relevant cases John Doe has identified, with the exception of

the district court's order on review.[2]  And undersigned counsel has been

unable to find any other case after *In re Search Warrant Issued June 13,*

---

[2] *See, e.g.*, *In re Search Warrants*, 1:21-cv-04968-SDG, 1:21-cv-04969-SDG, 2021 WL 5917983, at *5-6 (N.D. Ga. Dec. 15, 2021) (enjoining the government's filter team protocol and ordering a modified filter protocol that required items identified to be produced to prosecution team to first be provided to the privilege holders' counsel before disclosure so that counsel may object to disclosure); *United States v. Vepuri*, 585 F. Supp. 3d 760, 764-65 (E.D. Pa. 2021) (holding that filter team could not turn over to the prosecution team materials it determined were not privileged without giving the defendant an opportunity to mount challenge, and adopting filter review protocol wherein the filter team would review all materials, provide the defendant with immediate access, who would advise the filter team which materials it considered privileged, and a special master would review disputed documents); *Korf*, 11 F.4th at 1251-52 (approving filter review protocol that gave the privilege holders the opportunity to conduct the initial privilege review); *United States v. Avenatti*, 559 F. Supp. 3d 274, 283-84 (S.D.N.Y. 2021) (filter review protocol gave movant an opportunity to review *all* communications before they were turned over to the prosecution team); *Matter of O'Donovan*, No. 22-mj-1000-DLC, 2022 WL 10483922, at *3 (D. Mass. Oct. 17, 2022) (filter review protocol gave the privilege holder an objections period); *In re Search Warrants Executed on April 28, 2021*, 21-MC-425 (JPO), 2021 WL 2188150, at *4 (S.D.N.Y. May 28, 2021) (filter review protocol in which a special master was appointed to review the materials seized for privilege, and that determination was informed by the privilege holders' parallel review of the same materials); *United States v. Taylor*, Crim. No. 6:21-cr-00013-GFVT-HAI, 2022 WL 9408779, at *8 (E.D. Ky. Oct. 14. 2022) (recognizing filter teams are permissible so long as the privilege-holders can challenge the [filter] team's privilege determinations"); *Matter of Search of Information Associated with Two Accounts Stored at Premises Controlled by Google LLC*, Case No. 22-GJ-28, 2022 WL 18673694, at *1 (D.D.C. June 27, 2022) (privilege determinations made by filter team were reviewed by judicial officer before any documents were released to prosecution team).

*2019* in which a district court has approved a filter protocol in which a filter team is allowed to turn documents it unilaterally deems to be non-privileged over to the prosecution team without giving the privilege holder an opportunity to object.

Similarly, following the premise of Judge Rushing's concurrence, courts have consistently approved filter review protocols that gave the privilege holder an opportunity to object or required judicial determination of privilege before documents are turned over to the prosecution team. *See, e.g.*, *Korf*, 11 F.4th at 1251-52 (approving filter review protocol that required the government to provide seized material to the privilege holders for them to perform an initial privilege review); *Matter of O'Donovan*, 2022 WL 10483922, at *3 (approving filter review protocol that gave the privilege holder an objections period in which to review material deemed not privileged, privileged but redactable, or otherwise exempt and object to disclosure to the government); *Avenatti*, 559 F. Supp. 3d at 283-84 (approving filter review protocol in which the privilege holder was given an opportunity to review all communications before they were turned over to the prosecution team and to raise objections) ("In most cases, so long as the putative privilege holder (or its

17

designee) has notice and the opportunity to raise objections with the court before potentially privileged materials are disclosed to members of the prosecution team, it offends neither the law of privilege nor the Fourth Amendment to allow the Government to make the first pass."); *In re Search Warrants Executed on April 28, 2021*, 2021 WL 2188150, at \*4 (approving filter review protocol in which a special master was appointed to review the materials seized for privilege, and that determination was informed by the privilege holders' parallel review of the same materials); *Taylor*, 2022 WL 9408779, at \*8 (explaining that the remedy for the risks inherent in filter teams is the defendant's review of every determination by the filter team) ("[A filter team] procedure is commonly utilized and is permissible so long as the privilege-holders can challenge the [filter] team's privilege determinations.").

*Vepuri* is representative of the uniform practice of courts after *In re Search Warrant Issued June 13, 2019. See supra* note 2. In that case, the government, pursuant to three search warrants, seized electronically stored information from individual defendants and their businesses. *Vepuri*, 585 F. Supp. 3d at 762. The government then moved for an order

establishing a filter review protocol. *Id.* Under the government's proposed protocol,

> the filter team would determine the status of the seized materials and segregate them into three categories: (1) privileged materials; (2) not privileged materials; and (3) materials that may or may not be privileged. The materials in the first category would be returned to defendant. *The filter team would turn over to the prosecution team those materials in the second category without further input from defendant.* The materials in the third category would be subject to review by defense counsel. Before anything in the third category is provided to the investigative team, the court would resolve any disputes between the parties.

*Id.* (emphasis added).

The *Vepuri* court found that the government's proposed protocol was "fatally flawed" because "the filter team is permitted to provide to the prosecution team all materials it deems not to be privileged without any opportunity for the defendant to mount a challenge." *Id.* at 764. Because "[t]he authority to determine issues of privilege belongs to the courts and the courts alone[,] [t]he Government's proposed order undermines the separation of powers and vitiates significant interests of the defendant." *Id.* (citing *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 176-77). Therefore, the court adopted a filter review protocol that (1) required the government to "provide the defendant with

19

immediate access to the materials in its possession"; (2) required the defendant "to advise the filter team which materials it considers not to be privileged and which materials it considers to be privileged"; and (3) appointed a special master to resolve privilege disputes. *Id.* at 765.

Similarly, the Eleventh Circuit recently upheld a filter review protocol that allowed the privilege holders an opportunity to lodge privilege objections before materials were turned over to the prosecution team. *Korf*, 11 F.4th at 1251-52.

The procedural history in *Korf* is particularly instructive to this case. A magistrate judge authorized a search warrant that incorporated a filter review protocol that provided, in relevant part:

> If the filter team decides that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes a third party or the crime-fraud exception applies), the filter team must obtain a court order before providing these attorney communications to the investigative team.

*Id.* at 1240. The privilege holders moved to intervene, seeking "to perform their own privilege review." *Id.* at 1241. The government objected, "express[ing] deep concern over the Intervenors' proposal that they be trusted with the task of reviewing for privilege on their own" because "that type of approach would cause its investigation to cease in

its tracks." *Id.* The magistrate judge held a hearing, and then entered an order granting in part the privilege holders' motion. *Id.* at 1242. The magistrate judge ordered a modified filter team protocol to be put in place, under which the privilege holders would conduct the initial privilege review and provide a privilege log to the filter team. *Id.* at 1243. The privilege holders appealed to the district court, which affirmed the magistrate judge's revised protocol. *Id.* at 1244.

On appeal, the Eleventh Circuit upheld the magistrate judge's revised protocol. *Id.* at 1252. The court found that "the Modified Filter-Team Protocol did not assign judicial functions to the executive branch" because "the Intervenors have the first opportunity to identify potentially privileged materials." *Id.* at 1251. Therefore, the court upheld the protocol. *Id.*

Even before this Court's decision in *In re Search Warrant Issued June 13, 2019*, the Sixth Circuit reversed a district court's order adopting the government's proposed filter team protocol which included similar provisions for unilateral privilege determinations by the executive branch. *See In re Grand Jury Subpoenas*, 454 F.3d at 524. The Sixth Circuit explained the background principle that controls why the

21

executive branch cannot be allowed to make unilateral privileges determinations:

> [U]nder the [filter] team procedure, appellants' attorneys would have an opportunity to assert privilege only over those documents which the [filter] team has identified as being clearly or possibly privileged.  As such, we do not see any check in the proposed [filter] team review procedure against the possibility that the government's team might make some false negative conclusions, finding validly privileged documents to be otherwise; that is to say, we can find no check against Type II errors in the government's proposed procedure.  On the other hand, under the appellants' proposal, which incidentally seems to follow a fairly conventional privilege review procedure employed by law firms in response to discovery requests, the government would still enjoy the opportunity to challenge any documents that appellants' attorneys misidentify (via the commission of Type I errors) as privileged.  We thus find that, under these circumstances, the possible damage to the appellants' interest in protecting privilege exceeds the possible damage to the government's interest in grand jury secrecy and exigency in this case.  Therefore, we reverse the district court, and . . . hold that the appellants themselves must be given an opportunity to conduct their own privilege review[.]

*Id.* at 523.

These cases illustrate that protection of the attorney-client privilege necessitates an opportunity for the privilege holder to object before documents are given to the prosecution team during a filter team review of seized material because unilateral privilege determinations by an executive branch filter team violate the Constitution's separation of

powers, create too great a risk of irreparable harm to the privilege holder, and undermine the perception of fairness and equality in our criminal process.

Here, although the Modified Filter Review Protocol prevents the Filter Team from disclosing materials it deems to be privileged or potentially privileged to the Prosecution Team, it authorizes the Filter Team to turn over all other material (*i.e.*, material it deems neither privileged nor potentially privileged) directly to the Prosecution Team without giving John Doe an opportunity to lodge privilege objections. *See* JA60. This lack of protection makes the Modified Filter Review Protocol "fatally flawed." *Vepuri*, 585 F. Supp. 3d at 764.

In rejecting John Doe's challenge to the Modified Filter Review Protocol, the district court held that the Filter Team process used to decide that material is not potentially privileged is not a privilege determination in the first place. JA133 ("In the circumstances of this case, the initial term search is not a privilege determination, but merely a process to identify attorney-client material . . . ."). This is wrong. A determination that material is "not potentially privileged" is a

determination that the material is not privileged. And the district court erred by finding otherwise.

Implicit in the district court's analysis is the difficulty of segregating potentially privileged material from material that is not potentially privileged in light of the voluminous seizure at issue (*i.e.*, 23 digital sources). JA133. But the government should not be allowed to benefit by obtaining a less protective privilege protocol merely because the government chose to engage in an overbroad seizure. Indeed, the government could limit the volume of the material necessitating privilege review by instructing the Filter Team to conduct a relevancy review first, and such a review may well be required by the Fourth Amendment. *Cf. Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (recognizing the "manifest purpose" of the particularity requirement of the Fourth Amendment is to "ensure[] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit").

The district court also suggests that this case is materially distinguishable from *In re Search Warrant Issued June 13, 2019* because that case involved the search of a law firm, whereas this case does not.

JA133-135. However, first, the district court did not hold a hearing to address the quantity of potentially seized material, and, as discussed below, the Fifth Amendment should prohibit the court from requiring a target of an investigation to disclose detailed and specific information to the government that may provide investigative leads in order to protect their privileges. *See* discussion *infra* Section II. And, second, the holding of *In re Search Warrant Issued June 13, 2019*—that government filter teams cannot make final privilege determinations—is not limited to seizures from law firms; it applies uniformly to government privilege reviews, such as the review at issue here.

Finally, in reaching its erroneous conclusion that a government filter team's process of segregating potentially privileged material from non-privileged material is not itself a privilege determination, the district court relied on two cases, *Ritchey*, 942 F. Supp. 3d 891, and *United States v. Indivior Inc.*, 448 F. Supp. 3d 587 (W.D. Va. 2020). JA133. However, as discussed *supra*, *Ritchey* supports granting the relief John Doe requested, 605 F. Supp. 3d at 904 (holding that failure to provide objections period rendered the filter review protocol flawed), and *Indivior* involved a motion to suppress, not a challenge to the filter review

protocol, 448 F. Supp. 3d at 593. Thus, neither case relied on by the district court supports granting a government filter team the unilateral authority to make a final privilege determination by designating a document non-privileged and turning that document over to the prosecution team. Nor does either case support the district court's conclusion that a filter team's determination that a document is not potentially privileged is not a privilege determination.

Ultimately, the district court's finding that the initial process of separating potentially privileged materials from materials that are not potentially privileged is not a privilege determination is incorrect. When any entity determines a document is not "potentially privileged" it determines that the document is not privileged. That is a privilege determination. *See, e.g., Ritchey*, 605 F. Supp. 3d at 902. Moreover, as the court in *Ritchey* found, consistent with this Court's holding in *In re Search Warrant Issued June 13, 2019*, when a filter team designates material as non-privileged and turns those documents over to the prosecution team without providing the privilege holder with an objections period, the filter team improperly makes a "final" privilege determination. *Ritchey*, 605 F. Supp. 3d at 902 (citing *In re Search*

*Warrant Issued June 13, 2019*, 942 F.3d at 176).  Once the material is turned over, the damage is done, and the determination is final.  Because the Modified Filter Review Protocol authorizes the Filter Team to turn over materials it unilaterally deems non-privileged to the Prosecution Team without affording John Doe an objections period, this protocol is "fatally flawed." *Vepuri*, 585 F. Supp. 3d at 764.  Thus, the district court abused its discretion in finding that John Doe did not have a likelihood of success on the merits.

## II.   The District Court Erred in Finding Lack of Irreparable Harm.

The Supreme Court has held that the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  "Notably, the attorney-client privilege and the work-product doctrine jointly support the Sixth Amendment's guarantee of effective assistance of counsel." *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 174.  "For example, in assessing the interplay between the attorney-client privilege and the Sixth Amendment, . . . '[t]he essence of the Sixth Amendment right to effective assistance of counsel is, indeed, privacy of communication with counsel.'" *Id.* (brackets in original) (quoting *United States v. Brugman*,

655 F.2d 540, 546 (4th Cir. 1981)). "Absent privacy of communications and the 'full and frank' discussions that flow therefrom, a lawyer could be deprived of the information necessary to prepare and present his client's defense." *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

"Similarly, the work-product doctrine fulfills an essential and important role in ensuring the Sixth Amendment right to effective assistance of counsel." *Id.* "The Supreme Court has recognized that the work-product doctrine is vital to 'assur[e] the proper functioning of the criminal justice system,' in that it 'provid[es] a privileged area within which [a lawyer] can analyze and prepare his client's case.'" *Id.* (quoting *United States v. Nobles*, 442 U.S. 225, 238 (1975)).

"[A] communication between an attorney and his client that is protected by the common law attorney-client privilege is also protected from government intrusion by the sixth amendment." *United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir. 1983). "[A]n adverse party's review of privileged materials seriously injures the privilege holder." *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 175.

In the context of filter team reviews, this Court and others have recognized that government "review of those privileged materials cannot be undone." *Id.*; *see also Ritchey*, 605 F. Supp. 3d at 903 (recognizing the threat of irreparable harm caused by a filter review protocol that does not give the privilege holder the opportunity to object because "it is well-established that 'an adverse party's review of privileged materials seriously injures the privilege holder'" (quoting *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 175)); *In re Search Warrants*, 2021 WL 5917983, at *5 (finding irreparable harm factor weighed in favor of enjoining filter review protocol where it was "undisputed that the information seized . . . likely includes attorney-client privileged communications and work-product protected materials" because "the Court has a strong interest in protecting these privileges").

Here, the Modified Filter Review Protocol fails to afford John Doe an opportunity to raise privilege objections prior to the Prosecution Team receiving documents. This process creates a substantial risk of improper disclosure of privileged materials being turned over to the Prosecution Team. The harm resulting from improper disclosure under this flawed filter protocol is, by definition, irreparable. *See In re Search Warrant*

*Issued June 13, 2019*, 942 F.3d at 175 ("[T]he Filter Team's review of the materials seized . . . was and is injurious to the [movant]. And that harm is plainly irreparable, in that the Filter Team's review of those privileged materials cannot be undone.").

The district court concluded that this irreparable harm prong was not met primarily based on its conclusion that the filter process did not require the Filter Team to make privilege determinations. *See* JA136-137. As discussed above, that determination was erroneous, and the district court's finding with respect to irreparable harm was, therefore, also erroneous.

The Modified Filter Review Protocol threatens irreparable harm to John Doe as well: it requires John Doe to waive his Fifth Amendment privilege in order to protect his attorney-client privilege. Specifically, John Doe would have to identify for the government the names of lawyers and their staff who have done relevant legal work for John Doe and his companies. *See* JA84. These people could be witnesses who might assist the government in its investigation of John Doe. And, under the Fifth Amendment, a citizen cannot be compelled to provide any information to the government that might "furnish a link in the chain of evidence needed

to prosecute the claimant for a federal crime." *Hoffman*, 341 U.S. at 486; *see also Hubbell*, 530 U.S. at 38 (quoting *Doe v. United States*, 487 U.S. 201, 208 n.6 (1988)) ("Compelled testimony that communicates information that may 'lead to incriminating evidence' is privileged even if the information itself is not inculpatory."). However, in order to protect his attorney-client privileges and work product protections under the Modified Filter Review Protocol, John Doe has to provide names of these potential witnesses to the government. JA84. Therefore, the Modified Filter Review Protocol established by the magistrate judge and approved by the district court creates irreparable harm in that John Doe has to waive his Fifth Amendment privilege in order to attempt to protect his attorney-client privilege. Providing the government with potentially incriminating information cannot be undone. Thus, this harm is irreparable as well.

The district court disregarded this Fifth Amendment concern largely without discussion, stating, incorrectly, that John Doe had not cited legal authority to support the proposition that the magistrate judge failed to consider the harm to his Fifth Amendment rights in providing

search terms to the government.  JA136; JA97 (citing *Hoffman*, 341 U.S. at 486).

The district court also found that John Doe would not be harmed by providing search terms because he would have to provide this same information in order to lodge a privilege objection.  JA136.  This determination is incorrect as well.  The Modified Filter Review Protocol does not require John Doe to provide specific information explaining why a potentially privileged document is privileged.  *See* JA60.  Under that protocol, if the parties do not agree on *whether* (not why) a document is privileged, then the Filter Team will submit the document to the court under seal for a determination about privilege.  *See id.*  Moreover, when presenting privilege objections to the court (or to a court-appointed official), John Doe would seek, as necessary, specific protections against disclosure to the Prosecution Team of information provided in support of those objections in order to protect his Fifth Amendment privilege.  The Modified Filter Review Protocol includes no such Fifth Amendment protections.

In sum, because the district court's irreparable harm determination was premised on its erroneous conclusion that determining that a

document is not potentially privileged is not a privilege determination,
and because the district court failed to consider the Fifth Amendment
harm to John Doe under the Modified Filter Review Protocol, the district
court erred in finding a lack of irreparable harm to John Doe under the
Modified Filter Review Protocol.

## III.   The District Court Erred in Finding the Balance of Equities Weighed Against Enjoining the Filter Review Protocol.

The threatened injury to John Doe, *see* discussion *supra* Section II,
greatly outweighs any harm to the government.  At most, the harm the
government would incur if the injunction were granted is a brief delay
for John Doe to lodge privilege objections.   Below, the government
asserted, in generalities, that the balance of the equities weighs in its
favor, *see* JA53-54; JA115-116, but it did not specify exactly how it would
be harmed if the filter review protocol in this case gave John Doe an
opportunity to lodge privilege objections before material was turned over
to the Prosecution Team.

In determining the balance of the equities, "courts 'must balance
the competing claims of injury and must consider the effect on each party
of the granting or withholding of the requested relief.'"  *Winter*, 555 U.S.
at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)).

33

Providing the protections needed to adequately protect John Doe's privileges may cause minimal delays in the Prosecution Team's review of information; however, this consideration carries less weight in balancing the equities than does adequately protecting John Doe's privileges for a number of reasons.

First, the government waited approximately eight months to attempt to begin its review of the seized material. *See* JA106-107.

Second, the government's refusal to agree to John Doe's requested objections period has delayed the Prosecution Team's review for over a year. *See id.* As this Court has explained, "[t]he government should have been fully aware that use of [the filter protocol] under these circumstances was ripe for substantial legal challenges, and should have anticipated that those challenges could delay its investigations." *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 182. Here, in particular, the government should have anticipated such delay because the search at issue post-dated this Court's opinion *In re Search Warrant Issued June 13, 2019*, and because the government itself recognized that its extensive seizure of all electronic storage devices would capture privileged material. The government should have anticipated that John

Doe would seek to protect his privileges, including through litigation, if the government did not afford him a brief objections period. John Doe requested a 45-day objections period. *See* JA25. The government could have agreed to that request long ago, and, if it did, the Prosecution Team would have long ago received the vast majority—if not all—of the documents to which it is entitled. The government chose to draw a line in the sand, which is its right—but it must have known that doing so would lead to a substantial delay in its ability to review relevant material. In light of that choice to delay its review, the government's complaint about investigative delay should carry little weight.

Third, as noted above, *supra* Section I, the government's concern about investigative delay could be mitigated by the Prosecution Team instructing the Filter Team to first cull out irrelevant material from the 23 hard drives that were seized. Doing so would substantially reduce the amount of material John Doe would need to review for potential privilege and would expedite the review.

Thus, the government's decisions with respect to the breadth of the seizure, the seized material, and this privilege dispute show that the harm of delay is minimal as the government could have anticipated and

mitigated that delay but has chosen not to do so.  Indeed, the government seems to have discovered the interest in urgency only after John Doe refused to accede to the government's protocol.  And, under these circumstances, this interest against even minor investigative delay does not outweigh protecting "the essence" of John Doe's Sixth Amendment rights.  *See In re Search Warrant Issued June 13, 2019*, 942 F.3d at 174.

Additionally, the magistrate judge's concern that implementation of John Doe's requested relief would have "huge" implications is incorrect.  JA83.  As shown *supra* Section I, the relief John Doe seeks is not novel; it is in accord with *In re Search Warrant Issued June 13, 2019* and every relevant privilege protocol undersigned counsel has identified following *In re Search Warrant Issued June 13, 2019*.[3]  The government anticipated that its seizure would capture attorney-client privileged information, *see* JA2-16, and all John Doe is asking for is a brief period to lodge privilege objections before those tasked with building a case against him are able to review material that may be privileged and may relate directly to the matters under investigation.  This request is for a

---

[3] Like the government, the district court did not specify what injury the government would suffer if the court had granted John Doe's requested relief.  *See* JA137-138.

basic and uniformly granted protection.    To the extent that the government opposes John Doe reviewing any of his own seized documents in order to lodge privilege objections, the government could ask for the court to appoint a special master to conduct the privilege review.    The government has made no such request.

In sum, the only potential harm to the government is brief investigative delay, a harm that should not carry much weight based on the government's actions in this case thus far.    On the other hand, the harm to John Doe is that the protocol violates the Constitution by delegating to the government the judicial function of making privilege determinations and threatens to irreparably harm both his Fifth and Sixth Amendment rights and related privileges.    Thus, the balance of the equities favors granting John Doe a brief period to lodge privilege objections to the material designated by the Filter Team as non-privileged before that material is turned over to the Prosecution Team.

## IV.    The District Court Erred in Finding the Public Interest Would Not Be Served by Enjoining the Filter Review Protocol.

Finally, the public has a strong interest in the preservation of the attorney-client privilege, which is "the oldest of the privileges for

confidential communications known to the common law." *Upjohn*, 449 U.S. at 389; *see also In re Grand Jury Subpoenas*, 454 F.3d 511 at 519 (recognizing that the attorney-client privilege dates back to the Tudor dynasty). The public also has a strong interest in protecting the Sixth Amendment right to counsel, which the attorney-client privilege supports and safeguards. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d at 174-75. And the public has an interest in maintaining the integrity of our legal system and holding its participants to the highest level of ethical conduct. *See United States v. Hastings*, 461 U.S. 499, 527 (1983) (Brennan, J., concurring in part and dissenting in part).

This Court and many others recognize that the public interest supports filter review protocols that do not place unchecked and unilateral privilege determinations with the government. *See, e.g., In re Search Warrant Issued June 13, 2019*, 942 F.3d at 182-83; *Ritchey*, 605 F. Supp. 3d at 904; *In re Grand Jury Subpoenas*, 454 F.3d at 523.

As shown herein, the Modified Filter Review Protocol places John Doe's attorney-client privilege in peril. This protocol allows the government Filter Team to make a unilateral determination about what is not privileged, and then hand over that material to the Prosecution

38

Team without an opportunity for anyone else to object. Even if, under the Modified Filter Review Protocol, no privileged material were ultimately leaked to the Prosecution Team—the team solely responsible for determining whether and how to charge John Doe for criminal offenses—giving the government such unilateral authority not only violates the Constitution; it also undermines the appearance of fairness and justice of this process, because it amounts to "le[aving] the government's fox in charge of guarding the [privilege holder's] henhouse." *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 178. The government has "a responsibility to not only see that justice is done, but to also ensure that justice *appears* to be done." *Id.* at 183. Here, justice cannot actually be done, nor "appear to be done," *id.*, when the executive branch is performing the nondelegable judicial task of making a final privilege determination.

Thus, the public interest would be served by affording John Doe a brief period to lodge privilege objections before material deemed non-privileged by the Filter Team is turned over to the Prosecution Team.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court and remand for the district court to enter a filter review protocol that affords John Doe an objections period before materials are given to the Prosecution Team.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant John Doe requests oral argument. This appeal involves the propriety of a federal district court authorizing a filter team, comprised of federal prosecutors and staff, to make privilege determinations without an opportunity for the privilege holder to raise objections, or for a member of the judiciary to make a privilege determination. Since *In re Search Warrant Issued June 13, 2019*, this Court has not ruled on whether, and to what extent, a government-led filter team may make privilege determinations. Because that case was the product of "unique facts and circumstances," *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 183 (Rushing, J., concurring), further clarity is needed as to the limits of permissible government-led filter team review. To ensure protection of this vital privilege, to safeguard the Sixth Amendment right to counsel, to protect the target's Fifth

Amendment privileges, and to guard against irreparable injury to the privilege holder in this case and to others in future cases, this Court should grant oral argument.

Dated: July 19, 2023                    Respectfully submitted,

                                        /s/ Elliot S. Abrams
                                        Elliot S. Abrams
                                        Erin L. Wilson
                                        CHESHIRE PARKER
                                          SCHNEIDER, PLLC
                                        133 Fayetteville Street
                                        Suite 400
                                        Raleigh, NC  27601
                                        (919) 833-3114

                                        *Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

This document contains <u>8,013</u> words.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Century Schoolbook</u>.

Dated:  July 19, 2023                Respectfully submitted,

/s/ Elliot S. Abrams
Elliot S. Abrams
Erin L. Wilson
CHESHIRE PARKER
  SCHNEIDER, PLLC
133 Fayetteville Street
Suite 400
Raleigh, NC  27601
(919) 833-3114

*Counsel for Appellant*

42